## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | **No. 10-20062-01-KHV** |
| v. | ) | |
| | ) | **CIVIL ACTION** |
| ALEJANDRO R. WILLIAMS, | ) | **No. 13-2054-KHV** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On January 9, 2011, a jury found defendant guilty of one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and seven counts of distribution of five grams of cocaine base. See Verdict (Doc. #40). On May 10, 2011, the Court sentenced defendant to 235 months in prison. See Judgment In A Criminal Case (Doc. #56). On February 10, 2015, based on retroactive Amendment 782 to the Sentencing Guidelines, the Court reduced defendant's sentence to 188 months in prison. This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #73) filed February 4, 2013. For reasons stated below, the Court overrules defendant's motion and denies a certificate of appealability.

### Factual Background

On April 22, 2010, a grand jury returned an indictment which charged that from July 1 through December 30, 2009, defendant conspired to distribute and possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii). See Indictment (Doc. #1), Count 1. The indictment also charged defendant with seven counts of distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(B)(iii).  See id., Counts 2 through 8.

On direct appeal, the Tenth Circuit summarized the trial testimony as follows:

On July 16, 2009, Carmen Grimm, a confidential informant working with the U.S. Drug Enforcement Administration ("DEA"), called Mr. Williams and arranged to purchase crack cocaine from him. Ms. Grimm went to Mr. Williams's home and met him in his driveway.  Mr. Williams sold Ms. Grimm 11.9 grams of crack cocaine.  On July 30, 2009, Ms. Grimm again called Mr. Williams and asked to purchase crack cocaine.  Ms. Grimm went to Mr. Williams's home and met him in his driveway.  Mr. Williams sold Ms. Grimm 12.9 grams of crack cocaine.  On August 14, 2009, Pamela Bennett, a Kansas City police officer assigned to a DEA task force, called Mr. Williams and asked to purchase crack cocaine from him. During the call, Officer Bennett told Mr. Williams that she was Ms. Grimm's friend. Mr. Williams told Officer Bennett to meet him at his home.  When Officer Bennett arrived at Mr. Williams's home, she pulled into Mr. Williams's driveway.  An unknown man ("Mr. X") approached Officer Bennett's vehicle and asked her whether she had called.  Officer Bennett told Mr. X that she had called, and Mr. X sold her 13.7 grams of crack cocaine.  During the transaction, Officer Bennett saw Mr. Williams on the front porch of his residence.  On September 11, 2009, Officer Bennett again called Mr. Williams and arranged to purchase crack cocaine.  Officer Bennett drove to Mr. Williams's home and pulled into the driveway.  Mr. X again approached Officer Bennett's vehicle and sold her 11.7 grams of crack cocaine. During this transaction, Officer Bennett again saw Mr. Williams on his front porch. On September 18, 2009, Officer Bennett called Mr. Williams and arranged to purchase crack cocaine from him.  Officer Bennett drove to Mr. Williams's home and pulled into the driveway.  Mr. Williams got into Officer Bennett's vehicle and sold her 11.6 grams of crack cocaine.  On September 29, 2009, Officer Bennett arranged another drug deal with Mr. Williams.  When Officer Bennett arrived at Mr. Williams's home, Mr. X approached her vehicle.  Mr. X told Officer Bennett that Mr. Williams wanted her to avoid referring to specific drug quantities during her telephone conversations with Mr.  Williams.  Mr. X then sold Officer Bennett 12.4 grams of crack cocaine.  On November 23, 2009, Officer Bennett called Mr. Williams and arranged to purchase crack cocaine from him. When Officer Bennett arrived at Mr. Williams's home, Mr. Williams called her and told her he was waiting for someone to bring him more crack cocaine.  While Officer Bennett waited in Mr. Williams's driveway, another vehicle arrived.  Mr. Williams exited his home and spoke with the people in the second vehicle.  He then approached Officer Bennett and sold her 6.4 grams of crack cocaine.  * * * *

During its case-in-chief, the Government presented testimony from Ms. Grimm and Officer Bennett about the controlled drug purchases at Mr. Williams's residence. The Government also presented testimony from Cassandra Darveaux, a drug user who purchased crack cocaine from Mr. Williams on several occasions.

-2-

> Ms. Darveaux stated that from July 2009 through December 2009, she purchased crack cocaine from Mr. Williams 19 to 24 times. Ms. Darveaux arranged each purchase by calling Mr. Williams on his telephone. On most occasions, Mr. Williams met Ms. Darveaux and sold her crack cocaine. However, on some occasions, the crack cocaine [w]as delivered by Mr. X. During each of these transactions, Mr. X sold Ms. Darveaux either 3.5 or 7 grams of crack cocaine.

United States v. Williams, 468 F. App'x 899, 901-02 (10th Cir. 2012).

On January 19, 2011, the jury found defendant guilty on all eight counts. On the special verdict form, the jury found beyond a reasonable doubt that defendant conspired to possess with intent to distribute 50 grams or more of cocaine base and that each of the distribution counts involved five grams or more of cocaine base.[1]

The Presentence Investigation Report ("PSR") (Doc. #45) held defendant accountable for 2,720 grams of cocaine base. At sentencing, the government presented evidence that defendant was accountable for at least 1,720 grams of cocaine base. Defense counsel agreed that even if the Court applied the lower quantity of 1,720 grams, defendant's base offense remained at 34. Defendant also received a two-level enhancement as a manager under Section 3B1.1(c) of the United States Sentencing Guidelines. Based on a total offense level of 36 with a Criminal History Category III, defendant's guideline range was 235 to 293 months in prison. On May 10, 2011, the Court sentenced defendant to 235 months in prison.

Defendant appealed. On appeal, defendant argued that (1) the evidence presented at trial was insufficient to prove that he conspired to distribute 50 grams or more of crack cocaine and that the 50-gram-or-more quantity was an essential element of the offense charged in Count 1; (2) the district

---

[1]     Over defendant's objection, the Court did not include quantity as an element of the offenses in the jury instructions. Instead, the Court gave the jury a special verdict form which required it to determine whether the conspiracy offense involved 50 grams or more of cocaine base and whether each individual distribution count involved five grams or more of cocaine base.

court erred by failing to instruct the jury that drug quantity was an essential element of Count 1; (3) the district court erred by applying a two-level enhancement under Section 3B1.1(c) of the Guidelines because the government did not prove that he acted as a leader or manager in the drug conspiracy; and (4) the district court violated his rights under the Sixth Amendment by sentencing him based on a drug quantity determined by the district court judge under a preponderance of the evidence standard. Williams, 468 F. App'x at 904. The Tenth Circuit affirmed. See id. at 910.

Tim Burdick initially represented defendant. Shortly before a scheduled guilty plea, Burdick asked to withdraw as counsel because of a breakdown in communication. On October 8, 2010, the Court sustained counsel's motion and appointed Branden A. Bell to represent defendant. Bell represented defendant throughout the remaining proceedings in district court and on appeal.

On February 4, 2013, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion asserts that Bell was ineffective in nearly every aspect of this case. Specifically, defendant argues that Bell provided ineffective assistance because before trial (1) he did not file any meaningful motions; (2) he did not conduct any investigation; and (3) he did not challenge the indictment for failure to allege a specific quantity of cocaine. Defendant claims that Bell provided ineffective assistance at trial because (4) he entered into a stipulation regarding the weight and purity of cocaine without consulting defendant; (5) he did not offer an opening statement; (6) he conceded defendant's guilt in closing statement; (7) he did not challenge the jury instructions for failing to include quantity as an element of the offense; (8) he did not challenge the jury instructions as inconsistent with the Supreme Court decision in Alleyne v. United States, 133 S. Ct. 2151 (2013); (9) he did not challenge the verdict form; and (10) he did not object to Court's response to the jury question on quantity. Defendant claims that Bell provided ineffective

-4-

assistance at sentencing because (11) he did not object to judicial fact-finding of drug quantity and (12) he did not object to the Court's relevant conduct determination which included drug transactions that predated the charged conspiracy.  Finally, defendant claims that Bell provided ineffective assistance on appeal because (13) he failed to argued for application of the Fair Sentencing Act; (14) he gave contradictory statements on the weight of cocaine base; (15) he did not argue that the district court erred by considering as relevant conduct drug transactions that predated the charged conspiracy; and (16) he failed to argue that the jury instructions did not include the statutory threshold of 50 grams as an element of the offense.

### Analysis

The standard of review of Section 2255 petitions is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness."  United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).

Initially, the Court notes that defendant has challenged as ineffective nearly every aspect of Bell's performance during pretrial investigation, trial, sentencing and appeal. Strickland, however, mandates that the Court be "highly deferential" in its review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. The Court must not second-guess counsel's assistance with the benefit of hindsight simply because defendant was convicted. See id. Here, although counsel did not secure defendant's acquittal, his strategy and conduct was reasonable and highly competent. Based on the Court's observations of counsel's performance at trial and sentencing and his obvious preparation, defendant's allegations are highly suspect. Below, the Court addresses each of defendant's claims.

I.      **Failure To File Any Meaningful Pretrial Motions (Claim 1)**

Defendant argues that Bell provided ineffective assistance because he did not file any meaningful pretrial motions. See Defendant/Movant's Memorandum In Support (Doc. #74) at 12. Defendant notes that Bell filed two motions to continue and a motion to withdraw, but he did not file a suppression motion or any other substantive pretrial motions. See Movant's Opposition To The Government's Response To His 28 U.S.C. § 2255 Motion (Doc. #80) filed April 29, 2013 at 6. Only those motions having a solid foundation should be filed, however, not every possible motion. United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir. 1985). Defendant has not shown an adequate factual or legal basis for a pretrial motion or suggested how such a motion would have likely affected the outcome of trial or sentencing. The Court therefore overrules defendant's claim that counsel provided ineffective assistance for failing to file pretrial motions.

## II.      Failure To Conduct Pretrial Investigation (Claim 2)

Defendant argues that Bell provided ineffective assistance because he did not conduct any pretrial investigation. See Defendant/Movant's Memorandum In Support (Doc. #74) at 12. To rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, defendant may show that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). Counsel has a duty to make reasonable investigations or reasonable decisions that particular investigations are unnecessary. Id. A decision not to investigate must be assessed under the circumstances, applying a "heavy measure of deference" to counsel's judgments. Id. (quoting Strickland, 466 U.S. at 691). A decision not to investigate cannot be deemed reasonable if it is uninformed, see Hooper v. Mullin, 314 F.3d 1162, 1170-71 (10th Cir. 2002), but defendant has not shown that counsel's alleged decision was uninformed. Defendant does not refer to any specific information that counsel allegedly failed to obtain before trial.[2] Even if defendant could somehow show that counsel should have made some additional investigation, he has not shown a reasonable probability that if counsel had made any such investigation, the jury likely would not have convicted him. Id. at 694.

In his reply brief, defendant argues that counsel should have conducted background investigation which would have contradicted Sandra Glenn's testimony at sentencing about when she first purchased cocaine base from defendant. See Movant's Opposition To The Government's

---

[2]      Defendant argues generally that counsel did not seek pretrial discovery or a copy of the grand jury proceedings. See Defendant/Movant's Memorandum In Support (Doc. #74) at 13. Defendant has not identified what the alleged discovery or the grand jury transcripts would have revealed or how any such information would have affected the trial outcome.

Response To His 28 U.S.C. § 2255 Motion (Doc. #80) at 5, 7.  At sentencing, Glenn testified that in 2003, she first bought drugs from defendant at a car lot and that she assumed he worked there. Transcript Of Sentencing (Doc. #64) at 10-11.  Defendant argues that counsel should have discovered that Glenn's testimony on this point was false because he did not work at the car lot in 2003.  The PSR indicated that defendant worked at the car lot from 2000 to 2001.  PSR (Doc. #45) ¶ 67.  At sentencing, government counsel noted this discrepancy and suggested that defendant likely started selling cocaine base to Glenn in 2000 or 2001.  Transcript Of Sentencing (Doc. #64) at 24. The Court could have reasonably found that Glenn started purchasing cocaine base from defendant in 2000 or 2001.  See id. at 8 (Glenn arrested in June of 2007); id. at 10, 21 (Glenn bought from defendant for "five or six years"); id. at 20-21 (Glenn bought from him for "six or seven" years). Even so, government counsel stated that for purposes of sentencing, the Court should use 2003 as a fair and conservative estimate of when defendant started selling cocaine base to Glenn.  Id. at 24; see id. at 9, 19, 21 (Glenn started buying somewhere around 2003 or 2004).  In light of the government's concession, defendant does not explain how counsel's failure to further highlight the discrepancy was deficient or prejudicial.  Indeed, any attempt by counsel to impeach Glenn by highlighting that defendant worked at the car lot in 2000 and 2001 likely would have resulted in a two level increase in defendant's offense level.[3]  The Court therefore overrules defendant's second claim for relief.

---

[3]     The PSR found that defendant's base offense level was 34 because he was accountable for a total of 2,720 grams of cocaine base, which was near the top of the offense level range of at least 840 grams but less than 2,800 grams.  As to purchases from Glenn, the PSR estimated that defendant sold her some 2,316 grams of cocaine base over a four year period.  PSR (Doc. #45) ¶ 15.  If the Court had expanded the relevant period to five or six years, the total drug quantity would have easily placed defendant above the threshold for a base offense level 36.

### III.    Failure To Argue That Quantity Is Element Of Offense (Claims 3, 7, 9 and 16)

Defendant argues that Bell provided ineffective assistance because he did not object to the indictment for failure to set forth drug quantity, he did not propose a jury instruction which included drug quantity as an element of each offense, he did not object to the verdict form and he did not argue on appeal that the jury instructions should have included the statutory threshold quantity of 50 grams as an element of the conspiracy offense.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 18-22, 43.  Count 1 of the indictment charged that the conspiracy involved a specific quantity of cocaine base, i.e. 50 grams or more.  Indictment (Doc. #1) at 1.[4]  Likewise, the verdict form required the jury to determine beyond a reasonable doubt that the conspiracy involved 50 grams or more of cocaine base and that each of the individual distribution counts involved five grams or more of cocaine base.  Verdict (Doc. #40) at 1-3.  Because the jury found defendant guilty on Count 1 and determined that the conspiracy involved 50 grams or more of cocaine base, the Court properly applied the enhanced statutory penalties under 21 U.S.C. § 841(b)(1)(A)(iii).  Defendant has not alleged a sufficient factual or legal basis for counsel to object to his conviction or sentence on Count 1 based on the purported failure of the indictment to set forth drug quantity.

Defendant claims that Bell provided ineffective assistance because he did not argue that the jury must determine the quantity of cocaine base as an element of each offense, not as an answer to a special verdict form.  At the instruction conference, counsel made this precise argument and objected to the verdict form.[5]  Counsel's argument was within the wide range of reasonable

---

[4]    Counts 2 through 8 also charged that each act of distribution involved five grams or more of cocaine base.  Id.

[5]    Defendant suggests that the verdict form allowed the jury to find quantity under a
(continued...)

-9-

professional assistance and defendant has not explained how Bell could have more effectively presented the issue. In addition, defendant has not shown a reasonable probability that if counsel had presented his arguments differently, the result of trial likely would have been different. In ruling on a similar issue on direct appeal, the Tenth Circuit stated as follows:

> The district court denied Mr. Williams's request to instruct the jury that the 50-gram-or-more quantity was an element of Count One. But the district court submitted the issue of drug quantity to the jury by way of a special verdict form, and the jury indicated on the form that it had found beyond a reasonable doubt that Mr. Williams conspired to distribute or possess with intent to distribute 50 grams or more of crack cocaine.

> We need not decide whether the district court erred by omitting drug quantity as an element in the instruction concerning Count One because we conclude, based on the unique facts of this case, that such error would be harmless. *Cf. United States v. Robertson*, 473 F.3d 1289, 1293 n.2 (10th Cir. 2007) (declining to consider whether the district court erred in omitting an element in a jury instruction because the defendant had failed to demonstrate that the omission prejudiced her). Because the jury found beyond a reasonable doubt that Mr. Williams conspired to distribute more than 50 grams of crack cocaine, and because its finding was supported by sufficient evidence, we conclude that the trial court's omission of drug quantity in its instruction concerning Count One did not affect the verdict. *See United States v. Caldwell*, 589 F.3d 1323, 1333 (10th Cir. 2009).

Williams, 468 F. App'x at 907. In light of this Tenth Circuit ruling, defendant cannot show that counsel's failure to more effectively present the issue at the instruction conference was prejudicial. Likewise, counsel's failure to pursue this issue on appeal was not deficient or prejudicial.

The Court overrules defendant's third, seventh, ninth and sixteenth claims for relief.

## IV.   Entry Of Stipulation On Weight And Purity Of Cocaine (Claim 4)

Defendant argues that counsel provided ineffective assistance because without consulting him, he entered into a stipulation regarding the weight and purity of cocaine. Defendant/Movant's

---

[5](...continued)
"lesser standard," Defendant/Movant's Memorandum In Support (Doc. #74) at 22, but the verdict form recited "beyond a reasonable doubt" as to each of the quantity findings. Verdict (Doc. #40) filed January 19, 2011 at 1-3.

Memorandum In Support (Doc. #74) at 14; Movant's Opposition To The Government's Response

To His 28 U.S.C. § 2255 Motion (Doc. #80) at 9.  At the conclusion of the government's case,

government counsel read the stipulation which stated as follows:

> The parties agree and stipulate that analysis of the suspected controlled substances offered into evidence in this case [was] conducted in accordance with accepted scientific standards accepted in the forensic chemistry field for the identification of controlled substances.  Specifically, the scientific analysis performed by Alexandra Ambriz, Andrea Michiels, and Lucretia Weber of the Drug Enrocement Administration followed these standards and they are recognized as experts in the field of forensic chemistry for identification of controlled substances.  As such the parties agree and stipulate that the following controlled substances may be admitted into evidence without requiring the testimony of these forensic scientists:
>
> > a) Exhibit 2 - plastic bag of cocaine base weighing 11.9 grams
> > b) Exhibit 3 - plastic bag of cocaine base weighing 12.9 grams
> > c) Exhibit 4 - plastic bag of cocaine base weighing 13.7 grams
> > d) Exhibit 5 - plastic bag of cocaine base weighing 11.7 grams
> > e) Exhibit 6 - plastic bag of cocaine base weighing 11.6 grams
> > f) Exhibit 7 - plastic bag of cocaine base weighing 12.4 grams
> > g) Exhibit 8 - plastic bag of cocaine base weighing 6.4 grams

Stipulation Of Parties For Jury Trial (Doc. #34) filed January 19, 2011.

Liberally construed, defendant's motion asserts that without inquiring whether defendant

concurred in the stipulation, counsel conceded an element of the crime and denied defendant the

right to confront witnesses.  Defendant/Movant's Memorandum In Support (Doc. #74) at 15;

Movant's Opposition To The Government's Response To His 28 U.S.C. § 2255 Motion (Doc. #80)

at 13.  Defendant's claim is highly suspect because he did not raise the issue at side bar during trial,

during the colloquy about his decision not to testify at trial (which followed shortly after government

counsel read the stipulation) or in any written communication to the Court.[6]  See United States v.

---

[6]      In contrast, before both trial and sentencing, defendant filed unauthorized pro se motions and letters on various other issues.  See Letter (Doc. #12) filed August 25, 2010; pro se Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Failure To Comply With Procedural Requirements (Doc. #22) filed December 23, 2010; pro se Motion To Dismiss For Lack
(continued...)

Lee, 374 F.3d 637, 650 (8th Cir. 2004) (defendant aware of stipulation and waived confrontation rights when he did not object to stipulation in court); see also United States v. Aptt, 354 F.3d 1269, 1282 (10th Cir. 2004) (counsel may waive client's confrontation right if defendant does not object and decision part of legitimate trial tactic or strategy).  At sentencing, defendant also did not express any reservations about counsel's performance:

> THE COURT: So are you telling me that you worked out with him all of the issues that you had expressed to the Court?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you think he's done a good job for you?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: So you're satisfied with his representation and his communication with you?
>
> THE DEFENDANT: Yes.

Transcript Of Sentencing (Doc. #64) at 4.

Even if the Court assumes that defendant did not knowingly concur in the stipulation, defendant has offered no evidence to establish a reasonable probability that absent the stipulation, the result of trial would have been different.[7]  United States v. Amos, 216 F.3d 1073 (Table), 2000 WL 898881, at *1 (2d Cir. 2000) (even if defendant did not consent to stipulation, no showing that

---

[6](...continued)
Of Jurisdiction For Non-Positive Law (Doc. #23) filed January 3, 2011; pro se Affidavit Of Facts (Doc. #24) filed January 3, 2011; Letter (Doc. #47) filed April 28, 2011; pro se Motion To Vacate Judgment (Doc. #50) filed April 29, 2011; pro se Motion To Dismiss For Lack Of Territorial Jurisdiction Challenge To Jurisdiction Of Federal Prosecutor And DOJ, attached as Exhibit 4 to Motion To Vacate Judgment (Doc. #50) filed April 29, 2011.

[7]       The Court does not presume prejudice in these circumstances.  Cf. Roe v. Flores-Ortega, 528 U.S. 470, 477, 485-86 (2000) (presumption or prejudice where counsel disregards defendant's specific instructions to file appeal).

stipulation prejudiced his case). In particular, counsel's decision to enter into the stipulation was consistent with the defense strategy to admit that defendant individually distributed cocaine base, but to deny his participation in a conspiracy.[8] In addition, defendant has not alleged sufficient facts to establish that the DEA chemists would not have testified consistent with the stipulated facts.[9] The Court therefore overrules defendant's fourth claim for relief.

## V. Failure To Offer Opening Statement (Claim 5)

Defendant argues that counsel provided ineffective assistance because he did not offer an opening statement. See Defendant/Movant's Memorandum In Support (Doc. #74) at 16. Defense

---

[8]     Defendant's pro se briefing on his motion to vacate is largely consistent with such a strategy: he denies that he participated in a conspiracy but appears to acknowledge that he individually sold cocaine base on multiple occasions. Defendant/Movant's Memorandum In Support (Doc. #74) at 15 (denying agreement, but conceding that confidential sources or law enforcement purchased crack cocaine).

[9]     Defendant alleges that absent the stipulation, the government would have been required to have DEA witnesses testify. Defendant/Movant's Memorandum In Support (Doc. #74) at 15. Defendant does not explain how any such testimony would have aided his defense or would have been materially different from the stipulation. To warrant an evidentiary hearing on his claim, defendant must provide an affidavit of the potential witnesses as to the nature of the proposed testimony. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir. 1989) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (to warrant evidentiary hearing, movant must submit affidavit or sworn statement from witness or counsel); United States v. Cosby, 983 F. Supp. 1022, 1026 (D. Kan. 1997) (prejudice not established where defendant did not submit affidavit of potential alibi witnesses); see also Snow v. Sirmons, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (to show prejudice, habeas petitioner must show not only that testimony of uncalled witness would have been favorable, but that witness would have testified); United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (no evidentiary hearing required without firm idea of what testimony will encompass and how it will support claim); United States v. Jones, 124 F.3d 218 (Table), 1997 WL 580493, at *1 (10th Cir. Sept. 19, 1997) (certificate of appealability on ineffective assistance claim denied because defendant did not present specific facts to show that co-defendant would have offered exculpatory evidence). Absent an affidavit from DEA witnesses or some factual basis to suggest that the information in the stipulation was incorrect, defendant has failed to show prejudice. See Strickland, 466 U.S. at 694.

counsel commonly waive opening or closing statements as part of trial strategy.  Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000).  Here, Bell's decision to waive opening statement appears reasonable in light of the possibility that defendant would not testify or call any witnesses in his case.  See United States v. Larsen, 175 F. App'x 236, 240 (10th Cir. 2006) (waiver of opening statement not ineffective assistance even if no reasonable explanation for decision); United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) (decision to waive opening statement reasonable because counsel uncertain what defendant would say when called as witness); United States v. Miller, 907 F.2d 994, 998 (10th Cir. 1990) (strong presumption that counsel used sound trial strategy in deciding to waive argument).  Even if Bell's failure to offer an opening statement was somehow deficient, defendant has not alleged sufficient facts to establish prejudice in light of the Court's admonition to the jury.  See Transcript Of Jury Trial (Doc. #65) at 16 (defendant not required to make opening statement).  The Court therefore overrules his fifth claim for relief.

## VI.    Performance During Closing Statement (Claim 6)

Defendant argues that counsel provided ineffective assistance because he conceded defendant's guilt in closing statement.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 16.  Counsel stated as follows: "No one's going to stand up here and especially I'm not going to stand up here and tell you that Mr. Williams wasn't a crack dealer because he was.  That's what the testimony is."  Transcript Of Jury Trial (Doc. #65) at 173.  After making this concession, counsel explained why defendant was not guilty of the conspiracy charge.  See id. at 173-83.  Counsel's performance in closing argument was well within the wide range of reasonable professional assistance.  Likewise, in light of the unrebutted evidence that defendant personally distributed cocaine base on several occasions, defendant has not shown that counsel's closing argument likely affected the outcome of the trial.  The Court overrules defendant's sixth claim for relief.

### VII.   Failure To Challenge Jury Instructions Under <u>Alleyne</u> (Claim 8)

Defendant claims that Bell provided ineffective assistance because he did not challenge the jury instructions as inconsistent with <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013).   <u>See Supplemental Authority Supporting Defendant-Movant's 28 U.S.C. § 2255 Motion To Vacate, Set Aside Or Correct Sentence Now Pending The Court's Ruling</u> (Doc. #81) filed July 22, 2013 at 3-4. In <u>Alleyne</u>, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." <u>Id.</u> at 2155.   At the instruction conference, Bell argued that the quantity of cocaine base was an element of the offenses and should be included as part of the jury instruction on the elements of the offense. <u>Transcript Of Jury Trial</u> (Doc. #65) at 154, 158. Defendant has not alleged sufficient facts to show that Bell's performance was deficient. Bell's alleged failure to more effectively present the issue also did not prejudice defendant.   As the Tenth Circuit explained,  the omission of drug quantity in the elements instruction did not affect the verdict because the jury found beyond a reasonable doubt that defendant conspired to distribute 50 grams or more of cocaine base.   <u>See</u> <u>Williams</u>, 468 F. App'x at 907.   The Court therefore overrules defendant's eighth claim for relief.

### VIII.   Failure To Object To The Court's Response To Jury Question (Claim 10)

Defendant argues that Bell provided ineffective assistance because he did not object to the Court's response to a jury question. <u>See</u> <u>Defendant/Movant's Memorandum In Support</u> (Doc. #74) at 26-27.   During jury deliberations, the jury asked if it could find defendant guilty of conspiracy based on less than 50 grams. <u>Jury Question & Answer</u> (Doc. #38) at 1.   In response, the Court advised the jury as follows:

> Under Instruction No. 15, you may find defendant guilty based on less than 50 grams.  If you so find, you will so indicate on the verdict form.

Id. at 2.  Defendant argues that if counsel had objected to the response, the Court may have included the 50 gram threshold as an element in the instructions.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 27.  On direct appeal, the Tenth Circuit held that because the jury found beyond a reasonable doubt that defendant conspired to distribute more than 50 grams of crack cocaine, and because its finding was supported by sufficient evidence, the Court's omission of drug quantity as an element of the offense did not affect the verdict.  See Williams, 468 F. App'x at 907.  Accordingly, defendant cannot show that counsel's failure to object to the Court's response to the jury question on quantity was deficient or prejudicial.  The Court overrules defendant's tenth claim for relief.

**IX.    Failure To Challenge Judicial Fact Finding Of Drug Quantity (Claim 11)**

Defendant argues that at sentencing, counsel should have challenged drug quantity because the jury did not specifically find such an amount beyond a reasonable doubt.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 29-30.  In particular, defendant argues that in determining the "statutory" range, the Court could not consider drug transactions which predated the charged conspiracy (July 1 through December 30, 2009).  Id. at 30-31; Movant's Opposition To The Government's Response To His 28 U.S.C. § 2255 Motion (Doc. #80) at 17.  As noted, the jury concluded that from July 1 through December 31, 2009, defendant conspired to distribute 50 grams or more of cocaine base.  The Court properly sentenced defendant to 235 months, which was the low end of the guideline range of 235 to 293 months and within the amended statutory range of five to 40 years.

Liberally construed, defendant's motion also alleges that counsel should have challenged any judicial fact finding to increase the guideline range based on a drug quantity beyond the amount specifically found by the jury.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 29-

32.   On direct appeal, defendant raised a similar claim.  Because defendant did not raise the

argument at sentencing, the Tenth Circuit reviewed for plain error and stated as follows:

> The Supreme Court has consistently recognized that a judge may find facts for
> sentencing purposes without submitting the facts to the jury as long as the finding
> does not "increase[ ] the penalty for a crime beyond the prescribed statutory
> maximum."  *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147
> L.Ed.2d 435 (2000); *see also United States v. O'Brien*, 560 U.S. 218, 130 S. Ct.
> 2169, 2174-75, 176 L.Ed.2d 979 (2010) (noting that "[s]entencing factors ... can be
> proved to a judge at sentencing by a preponderance of the evidence," but
> "judge-found sentencing factors cannot increase the maximum sentence a defendant
> might otherwise receive based purely on the facts found by the jury"); *Harris v.
> United States*, 536 U.S. 545, 565, 122 S. Ct. 2406, 153 L.Ed.2d 524 (2002) ("[T]he
> facts guiding judicial discretion below the statutory maximum need not be alleged
> in the indictment, submitted to the jury, or proved beyond a reasonable doubt. . . .
> The judge may impose the minimum, the maximum, or any other sentence within the
> range without seeking further authorization from those juries – and without
> contradicting Apprendi.").  Thus, "it is . . . universally accepted that judge-found
> facts . . . do not violate the Sixth Amendment" unless they increase a defendant's
> sentence beyond the prescribed statutory maximum.  *United States v. Lauder*, 409
> F.3d 1254, 1269 (10th Cir. 2005).

> Here, the district court's fact finding did not increase Mr. Williams's sentence
> beyond the maximum sentence prescribed for a conviction of conspiracy to distribute
> 50 grams or more of crack cocaine.  *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii)
> (2009).  Accordingly, we hold that the district court did not violate Mr. Williams's
> rights under the Sixth Amendment by relying on drug quantities not found by the
> jury in determining Mr. Williams's offense level.

Williams, 468 F. App'x at 909-10.

In light of the Tenth Circuit ruling, counsel's failure to challenge judicial fact finding of drug

quantity was not deficient or prejudicial.  The Court therefore overrules defendant's eleventh claim

for relief.

## X.    Failure To Object To Relevant Conduct (Claims 12 and 15)

Defendant argues that counsel provided ineffective assistance at sentencing and on appeal

because he did not argue that the Court should have excluded from relevant conduct the drug

transactions that predated the charged conspiracy.  See Defendant/Movant's Memorandum In

Support (Doc. #74) at 32. Defendant argues that counsel should have objected that the Court did not make a specific finding that defendant's prior sales to Glenn, Grimm and a confidential informant were part of the "same course of conduct or common scheme or plan as the offense of conviction."  Movant's Opposition To The Government's Response To His 28 U.S.C. § 2255 Motion (Doc. #80) at 22.

Defendant has not shown any factual or legal basis for such an objection. A sentencing court may look beyond the offense of conviction and consider quantities of drugs not alleged in calculating defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction. United States v. Burkins, 596 F. App'x 685, 690-91 (10th Cir. 2014); United States v. Moore, 130 F.3d 1414, 1416 (10th Cir. 1997). Defendant's sales of cocaine base on a regular basis over a period of years are squarely within the "same course of conduct" as the instant offenses involving distribution and conspiracy to distribute cocaine base. See United States v. Roederer, 11 F.3d 973, 979 (10th Cir. 1993) ("same course of conduct" means same type of criminal activity over time; it does not require that acts be connected by common participants or overall scheme); id. at 979-80 (conduct approximately five years before offense of conviction relevant conduct where conduct similar and defendant engaged in additional similar conduct in time between offenses); see also United States v. Hodge, 354 F.3d 305, 314-15 (4th Cir. 2004) (strong showing of regularity compensated for temporal gap between uncharged conduct in 1996 and offense of conviction in 1999; sales in 1996 and offense in 1999 offense part of continuous pattern of narcotics trafficking); United States v. Richards, 27 F.3d 465, 468-69 (10th Cir. 1994) (weekly heroin sales over four-month period relevant conduct with respect to heroin trafficking offense some 17 months later). Counsel's concession at sentencing and on appeal that defendant's prior sales of cocaine base from 2004 through 2010 were part of relevant conduct was

not deficient or prejudicial.  The Court therefore overrules defendant's twelfth and fifteenth claims for relief.

## XI.    Appeal: Failure To Raise Fair Sentencing Act (Claim 13)

Defendant argues that counsel provided ineffective assistance because on appeal, he did not challenge defendant's sentence in light of the Fair Sentencing Act of 2010, Pub.L. No. 111-220, 124 Stat. 2372 ("FSA"), which became effective August 3, 2010.   See Defendant/Movant's Memorandum In Support (Doc. #74) at 36-37.  In particular, relying on Dorsey v. United States, 132 S. Ct. 2321 (2011), defendant claims that he should not have been subject to the higher statutory penalties under 21 U.S.C. § 841(b)(1)(A).  For offenders sentenced after August 3, 2010, the FSA reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences.[10]  In particular, the FSA raised from 50 to 280 grams the amount of cocaine base needed to trigger the statutory range of ten years to life in prison.  See 21 U.S.C. § 841(b)(1)(A)(iii).  The FSA also raised from five to 28 grams the amount of crack cocaine needed to trigger the statutory range of five to 40 years in prison.  See 21 U.S.C. § 841(b)(1)(B)(iii).

Here, the PSR used the pre-FSA statutory range on Count 1 of ten years to life.  See PSR (Doc. #45) ¶¶ 71-72.  Under the FSA, based on the jury finding that the conspiracy involved 50 grams or more of cocaine base, the correct statutory range on Count 1 was five to 40 years.[11]  See 21 U.S.C. § 841(b)(1)(B)(iii).  Neither party raised the issue at sentencing.  The PSR's error in

---

[10]    The FSA also reduced the crack cocaine/powder cocaine ratio to 18:1 in the Sentencing Guidelines.  Here, the PSR used the November 1, 2010 version of the Guidelines which included the amended provisions of Section 2D1.1(c).

[11]    The PSR also used the pre-FSA statutory range on Counts 2 through 8 of five to 40 years.  PSR (Doc. #45) ¶¶ 71-72.  Based on the jury finding that each distribution charge involved five grams or more of cocaine base, the correct statutory range on Counts 2 through 8 was zero to five years.  See 21 U.S.C. § 841(b)(1)(C)(iii).

bracketing the statutory ranges was immaterial, however, in light of defendant's guideline range of 235 to 293 months, which was within the statutory ranges of both Section 841(b)(1)(A) (ten years to life) and Section 841(b)(1)(B) (five to 40 years).  The Court sentenced defendant to 235 months, which was well within the correct statutory range for Count 1 (five to 40 years).  Accordingly, counsel's failure to object on appeal based on the FSA was not deficient or prejudicial.

The Court overrules defendant's thirteenth claim for relief.

**XII.    Appeal: Contradictory Statements On Quantity (Claim 14)**

Defendant argues that counsel provided ineffective assistance because on appeal, he gave contradictory statements about the weight of cocaine base.  See Defendant/Movant's Memorandum In Support (Doc. #74) at 38-39.  In particular, defendant argues that counsel provided ineffective assistance by making the following concession in the opening appellate brief:

> Considered in the light most favorable to the Government, [Cassandra] Darveaux's testimony was that she purchased narcotics from a person other than Mr. Williams on 2 occasions (10% of 20 occasions).  Darveaux stated that she alternately purchased 3.5 and 7 gram quantities, so assuming she purchased 3.5 g on one of the occasions and 7 g on the other occasions, her testimony was [that] she purchased 10.5 g of cocaine base from Mr. Williams and another person acting jointly.

Brief Of Appellant, United States v. Williams, No. 11-3136, 2011 WL 3891090, at n. 8.  Defendant argues that counsel lost credibility with the appellate court because Darveaux did not specifically testify that she "alternately" purchased 3.5 gram (one 8-ball) and 7 gram (two 8-ball) quantities.  Defendant/Movant's Memorandum In Support (Doc. #74) at 39.  Instead, defendant notes that Darveaux testified that she purchased a "couple of 8-balls" or "[o]ne to two 8-balls."  Id.  The common dictionary definition of "alternately" is "[w]ith two things continually following and succeeded by each other; one after the other."    Oxford  Dictionary,  Online, http://www.oxforddictionaries.com/us/definition/american_english/alternately,  accessed  Jan.  4,

2016.  In context of defendant's appellant brief, counsel's use of the word "alternately" was intended to mean "alternatively."   Id. (noting use of "alternately" as sentence adverb meaning "alternatively").  The statement that Darveaux "alternately" purchased 3.5 and 7 gram quantities was in a footnote to a sentence which stated that she testified that she purchased "either" 3.5 grams or 7 grams.

At trial, Darveaux testified as follows:

Q.    Then when you went with other individuals, what would you go to purchase?

A.    A larger quantity.  Then the next up from that.  And it wouldn't be just one, it would be a couple because we would take it back to the person we were getting it from so they could distribute it.

Q.    And what kind of quantities would you get when you went with other people?

A.    A couple of 8-balls.  * * * *

Q.    Was it ever more than two 8-balls or it was just one to two 8-balls when you went with other people?

A.    One to two 8-balls.

Q.    And you estimated that from July of 2009 to December of 2009 you went with other people to do that about 20 times?  * * * *

A.    Yes. Yes, sir.  * * * *

Q.    And then who would come out?

A.    Most of the time it would be Ray. Some other times it was the other folks.  * * * *

Q.    I believe you said the majority of the time your transactions would be with Mr. Williams himself?

A.    Yes.

Q.    Okay. And then a few times, maybe two or three times, it would be somebody else?

A.      I don't have a general number, but other times it was with other individuals, yes.

Q.      Okay. About how many other times would you say there are other individuals?

A.      Out of the 15 or 20 times I had gone there, maybe four or five.

Q.      And some of those times would be when you were there by yourself and some of those times would be when you were there with your friends?

A.      No, never when I was by myself, it was always with Ray. And when I went with the other folks, I would say a good estimate would be 90% of the time, 95% of the time it would be Ray, the other 5% would be someone else.

Transcript Of Jury Trial (Doc. #65) at 90-91, 95-96.

The Tenth Circuit held that based on Darveaux's testimony that she purchased up to seven grams of crack cocaine from X on at least two occasions, the jury reasonably could have found that she purchased a total of 14 grams of crack cocaine from X. See Williams, 468 F. App'x at 906. The Tenth Circuit added the 14 grams to the 37.8 grams that X sold to Officer Bennett and concluded that the jury reasonably could have found that defendant and X agreed to distribute at least 51.8 grams of crack cocaine. See id. Darveaux's testimony was not extremely precise on the quantity of cocaine base that she received from X. Although the Tenth Circuit rejected counsel's suggestion that Darveaux purchased a total of 10.5 grams of crack cocaine (based on her testimony that she purchased either 3.5 grams or 7 grams), his argument was reasonable and if adopted by the Tenth Circuit, would have resulted in the reversal of defendant's conviction for conspiracy to distribute 50 grams or more of cocaine base.[12] In sum, defendant has not alleged sufficient facts to

_____

[12]    Indeed, the Tenth Circuit used counsel's estimate that Darveaux received cocaine base from X on two occasions (ten percent of 20 occasions). See Williams, 468 F. App'x at 906 n.10. Taken as a whole, it appears that a reasonable jury could have found that Darveaux's "estimate" of ten percent was mistaken and did not supersede her specific testimony that out of the 15 or 20 times that she went to the location for drugs, she received cocaine base from someone other
(continued...)

show that Bell's argument on appeal about Darveaux's testimony was deficient or prejudicial. The Court therefore overrules defendant's fourteenth claim for relief.

### Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Cervini, 379 F.3d 987, 994 (10th Cir. 2004) (standard for evidentiary hearing higher than notice pleading); United States v. Kilpatrick, 124 F.3d 218 (Table), 1997 WL 537866, at *3 (10th Cir. 1997) (conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where court may resolve factual matters raised by Section 2255 petition on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

### Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[13] To satisfy this standard, the movant must

---

[12](...continued)
than defendant "maybe four or five" times or in other words, as much as 25 percent of the transactions (five times out of 20).

[13]      The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not satisfied this standard. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #73) filed February 4, 2013 be and hereby is **OVERRULED**. A certificate of appealability as to the ruling on defendant's Section 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's letter (Doc. #83), which the Court construes as a motion to expedite ruling on defendant's Section 2255 motion, filed May 14, 2015 be and hereby is **OVERRULED as moot**.

Dated this 11th day of January, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge